IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEROME COFFEE, | ) | |
| Plaintiff, | ) | Civil Action No. 12-163 |
| | ) | |
| v. | ) | District Judge Cohill |
| | ) | |
| RAYMOND BURKHART, et al, | ) | Magistrate Judge Baxter |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that the motion for summary judgment filed by Defendants [ECF No. 15] be GRANTED IN PART AND DENIED IN PART.

- Summary judgment should be granted in favor of Defendants on Plaintiff's retaliation claims based upon illegal cell searches due to Plaintiff's failure to exhaust his administrative remedies;

- Summary judgment should be denied on Plaintiff's retaliation claim based upon the false misconduct; and

- Summary judgment should be denied on Plaintiff's retaliation claim based upon the denial or non-reinstatement of privileges.

**II.     REPORT**

    **A.     Relevant Background**

Plaintiff Jerome Coffee, an inmate incarcerated within the State Correctional System of Pennsylvania, presented this civil rights complaint in July of 2012. Named as Defendants to this action are: Raymond Burkhart, Andre Repko, Thomas Riskus, Eric Tice, Paul Ennis, W.D. Cole, and Anne Plaska.

Plaintiff asserts the following retaliation claims arising during his incarceration at SCI Forest:

1) Lt. Burkhart performed illegal cell searches on December 26, 2011, and January 30, 2012, and removed or damaged property in retaliation for Plaintiff's prior grievances;

2) In February and March of 2012, Captain Riskus, Major Repko and Hearing Examiner Plaska issued (and/or found Plaintiff guilty of) a false misconduct for lying, in retaliation for filing grievances; and

3) Defendant PRC members (Tice, Ennis and Cole) retaliated against Plaintiff for filing grievances by denying him privileges once he was moved to AC status in April of 2012.

Defendants have filed a motion for summary judgment [ECF No. 15] and Plaintiff has filed an opposition brief [ECF No. 33]. The issues are fully briefed and are ripe for disposition by this Court.

### B.  Standards of Review

#### 1)  *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading

2

rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2) Motion for summary judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to

interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at *1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

### C. Retaliation based upon Cell Searches

Defendants move for summary judgment on Plaintiff's retaliation claims arising out of the cell searches based upon on Plaintiff's failure to exhaust his administrative remedies in compliance with the Prison Litigation Reform Act.[1]

#### 1) The Exhaustion Requirement of the PLRA

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

---

[1] Defendants do not argue that Plaintiff has failed to exhaust his administrative remedies as to his other retaliation claims.

4

The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013).[2] The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83.[3]

---

[2] "As such, just as subject matter jurisdiction, personal jurisdiction, and venue, exhaustion is a 'threshold issue that *courts* must address to determine whether litigation is being conducted in the right forum at the right time.'" Small, 728 F.3d at 270, quoting Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir. 2010). See also Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[3] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

5

## 2) The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days.[4] See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001). Furthermore, the Department of Corrections grievance policy requires responsible individuals to be named or identified in the grievance. Spruill, 372 F.3d at 234.

## 3) Analysis of Exhaustion

*The December 26th Cell Search*

---

[4] DC-ADM 804(f) – (j) provides that at the Final Review level, a failure to provide all required documentation will result in dismissal of the appeal.

The record before this Court reflects that Plaintiff filed an initial grievance about the December 26th cell search on December 30, 2011. In Grievance No. 395086, Plaintiff complained that his cell was ransacked and that some of his belongings were missing. ECF No. 18-1, page 27. The subject matter of this grievance is limited to the cell search and the missing property. Plaintiff does not raise any retaliation claim as he must in order to have exhausted his retaliation claim. See Spencer v. City of Philadelphia, 2012 WL 1111141 (W.D. Pa.) aff'd 2013 WL 5696510 (3d Cir.). Additionally, Plaintiff did not appeal this grievance to the level of final review. For both these reasons, Plaintiff has failed to exhaust his administrative remedies as to this claim and the motion for summary judgment should be granted in this regard.

*The January 30th Cell Search*

On February 1, 2012, Plaintiff filed Grievance No. 399229 complaining that Defendant Burkhart entered his cell and broke his radio. ECF No. 18-1, page 61. Again, the subject matter of this grievance is limited to the broken property and does not raise a retaliation claim. Accordingly, because Plaintiff has not raised his retaliation claim through the administrative remedy process, the motion for summary judgment should be granted as to this claim.

### D. Grievance No. 399229 (January 30th Cell Search) and the Resulting Misconduct/s

At the outset, it is necessary to review the circuitous route through which this grievance and resulting misconduct traveled, so as to fully understand Plaintiff's remaining retaliation claims.

*Grievance No. 399229*

Defendant Riskus investigated Grievance No. 399229 about the January 30th cell search and broken radio. Plaintiff's grievance was very specific in that he claimed that Burkhart entered

7

his cell between the hours of 7:30 am and 10:30 am and broke his radio. Defendant Riskus issued his Initial Response Review to the grievance, denying it in full:

> Coffey [sic] has filed a grievance alleging that on 1-30-2012 between the hours of 0730 to 1030 Security Officials namely Lt. Burkhart entered his cell while he was in the law library and broke that handle on his radio. Inmate Coffey is seeking restitution in the amount of $100.
>
> Upon review of the institutional video for the date of 1-30-2012 between the hours of 0730 to 1030 it was observed that Lt. Burkhart <u>does not enter</u> the cell. Lt. Burkhart was questioned in regards to the allegations submitted by Inmate Coffey. Lt. Burkhart indicated that <u>he did enter</u> inmate Coffey's cell on 1-30-2012 between the hours of 07:30 to 10:30.
>
> This investigator is unable to substantiate the allegation submitted by inmate Coffey; this grievance as well as the restitution being sought by inmate Coffey is denied in full.

ECF No. 18-1, page 83 (emphasis added). Obviously, this document contains a contradiction in that at one point Defendant Riskus says that Lt. Burkhart <u>did</u> <u>not</u> enter the cell and then he reports that Lt. Burkhart said he <u>did</u> enter the cell. This is the source of much confusion that follows. This Initial Review Response was later re-issued so as to indicate that "… Burkhart indicated that he <u>did</u> <u>not</u> enter Coffey's [sic] cell on 1-30-2012…" Id. at 96. However, it is not clear on what date the Initial Review Response was re-issued.

On February 27, 2012, Plaintiff appealed the Initial Review Response to the Superintendent. Id. at 64. On March 16, 2012, Plaintiff's appeal was remanded by Facility Manager Sauers for further investigation and response. Id. at 70. On March 25th, upon remand, Officer Riskus explained the "correction" in the first Initial Review Response and upheld his original decision denying Plaintiff's grievance. Id. at page 72.

Plaintiff again appealed to the Superintendent on March 30, 2012. ECF No. 34, pages 28-29. In a Response dated April 13, 2012, Superintendent Sauers upheld the initial response. Id. at 30-31. By letter dated April 10th, Plaintiff filed an Appeal to Dorina Varner, the Chief Grievance

Officer, at the Central Office.[5] Id. at 32-33. Plaintiff was notified that he had failed to provide all the necessary documents for review and was given additional time in which to do so. In a Final Appeal Decision dated June 5, 2012, Chief Grievance Officer Varner indicated that Plaintiff's grievance was dismissed because he had not provided the required documentation for proper review. Id. at 34.

*Misconduct Nos. B307797/B292817*

While conducting his initial investigation of Grievance No. 399229 and reviewing videotape of the time in question, Defendant Riskus concluded that Plaintiff lied about Burkhart entering his cell on January 30th. After issuing the Initial Review Response to Grievance No. 399229, Riskus took the additional step of issuing Misconduct No. B307797 for Lying to an Employee. ECF No. 18-1, page 66. This Misconduct was issued on February 9, 2012. Id. A misconduct hearing was held on February 14th at which time the hearing examiner dismissed the misconduct without prejudice.

The misconduct was reissued as Misconduct No. B292817 on February 15, 2012. ECF No. 18-1, page 68. After a misconduct hearing on February 21, 2012, Plaintiff was found guilty by Hearing Examiner Plaska of Lying to an Employee and Plaintiff was sanctioned to ninety days of disciplinary custody ("DC"). Plaintiff appealed that finding. Id. at 10-11. On March 19, 2012, Superintendent Sauers remanded the matter to the PRC for their re-review. Id. at 12.

On March 30, 2012, the PRC issued a report that specifically sustained the Hearing Examiner's decision. Id. at 13. However, in his Declaration, Deputy Superintendent Eric Tice, a member of the PRC, explains that:

---

[5] This Court recognizes the inconsistency of the dates on these documents. It is unlikely that Plaintiff could have dated an appeal April 10th when he had not received Sauers' response dated April 13th.

> On remand, we decided to dismiss Plaintiff's DC [Disciplinary Custody] time and place him on AC [Administrative Custody] status at that point - 3/29/12. This did not mean we disagreed with the hearing examiners' determination of guilt – in fact, we again sustained her decision. Rather, PRC's decision to release Inmate Coffee from the additional DC time was due to the procedural confusion that had arisen with the repeated back and forth involving remanded misconduct and grievance appeals, all triggered by an unfortunate typographical error in the original grievance response. In addition, Mr. Coffee had already served nearly half of the disciplinary sanction at that point. Several weeks later, on 4/18/12, we formally dismissed the misconduct, again due to the procedural confusion that had been generated, not because we felt that Inmate Coffee was not guilty.

ECF No. 18-2, pages 39-40, ¶ 6. In an "Other Report" dated March 30, 2012, the writer (whose name is illegible) indicates that "on 3/29/12, Inmate Coffee's DC time was dismissed by PRC. Inmate Coffee is not in AC status…" Id. at 16.

On April 18th, the PRC issued a new decision "amending their response to sustain the Hearing Examiner's decision by dismissing the misconduct with prejudice. The misconduct will be removed from record." Id. at 14. Furthermore, the decision indicates that Coffee is "exonerated,"[6] but does not provide an explanation for the departure from the previous decision. Id.

Plaintiff alleges that in retaliation for his grievance against Burkhart, Defendant Repko caused Defendant Riskus to fabricate the original misconduct for lying. ECF No. 4, ¶ 18. Plaintiff further alleges that these two Defendants conspired with Hearing Examiner Plaska to cause the false misconduct to be dismissed without prejudice and reissued. Id. at ¶¶ 19- 24.

It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523,

---

[6] In their Response to Plaintiff's Statement of Disputed Facts, Defendants deny that Plaintiff was exonerated. ECF No. 35, ¶ 5. However, the April 18th document signed by Defendants Tice, Ennis and Cole indicates that the "Decision Relative to Hearing Committee's Verdict" is that the inmate is "exonerated." ECF No. 18-2, page 14.

10

530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). See also O'Bryant v. Finch, 637 F.3d 107, 1212 n10 (11th Cir. 2011) ("[O]ur Court recognizes that an inmate has a § 1983 action if prison officials file false disciplinary charges in retaliation for the inmate exercising his right to free speech by making grievances about prison conditions.").

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must allege:

1) the conduct in which he was engaged was constitutionally protected;

2) he suffered "adverse action" at the hands of prison officials[7]; and

3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). See also Holbrook v. Walters, 296 Fed. Appx 230, 233 (3d Cir. 2008).[8]

Generally, the filing of grievances satisfies the constitutionally protected conduct prong of a retaliation claim. Laurenzau v. Romarowics, 528 Fed.Appx 136, 139 (3d Cir. 2013); Rauser, 241 F.3d at 333; Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). However, the inclusion of false statements within grievances does not constitute constitutionally protected conduct. Curry v. Hall, 839 F.Supp. 1437, 1441 (D.Or. 1993) ("The fact that a false statement is included in a grievance does not give the false statement a special First Amendment status, transforming the statement into protected speech. […] [F]alse statements are not generally

---

[7] To show the "adverse action" necessary to fulfill the second prong, the prisoner plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. 2002) quoting Allah v. Seiverling, 229 F.3d at 225. There is no doubt that Plaintiff's disciplinary sanction of ninety days in DC satisfies the adverse action prong of a *prima facie* retaliation claim.

[8] Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158.

11

protected by the First Amendment."). See also Hancock v. Thalacker, 933 F.Supp. 1449 (N.D. Iowa 1996). In order to proceed with any further analysis of this claim, this Court must determine whether Plaintiff has demonstrated that he engaged in any constitutionally protected conduct so as to support his retaliation claim. If Plaintiff's statements in the grievance are truthful, they are constitutionally protected, but if Plaintiff's statements are lies (which supports the filing of the misconduct/s), there is no constitutionally protected conduct and Plaintiff's retaliation claim fails. This determination is a question of fact. See O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011) ("whether an inmate actually committed the charged infraction or whether the disciplinary report falsely accuses the inmate are questions of fact…")

Defendants maintain that the misconduct/s arising out of Grievance No. 399229 are based upon Riskus' investigation which revealed that Plaintiff lied about Burkhart entering his cell on January 30th. In support of their position in this regard, Defendants have submitted the video taken on January 30, 2012 for Plaintiff's pod. ECF No. 18, Exhibit 15. See also ECF No. 18-2, Declaration of Lt. Raymond Burkhart, page 49, ¶ 8. While Defendants assert that the video proves that Burkhart did not enter Plaintiff's cell on the date and time specified, Plaintiff argues that the video has been altered and he provides his own evidence to refute the video. Plaintiff has provided the Affidavits of fellow inmates Shawn Smith and Javier Ortiz who both indicate that they personally saw Burkhart exit Plaintiff's cell on January 30th during the hours in question. Furthermore, Inmate Smith swears that he heard a radio, then the radio went quiet and there was a "thrashing sound as if the radio had been slammed, or banged around" (ECF No. 34-2, page 18), and Inmate Ortiz tells that he saw Burkhart "toying with the radio, I then saw him bang the radio against the wall several times" (id. at 20).

The resolution of the factual question of whether Plaintiff's statements about Burkhart in Grievance No. 399229 are constitutionally protected is a disputed issue of material fact because if the statements are a lie they are not protected conduct, but if the statements are truthful, the filing of the grievance is constitutionally protected conduct. This factual dispute is fatal to Defendants' motion for summary judgment. The parties have provided contradictory evidence on this very point and so accordingly, the motion for summary judgment should be denied as to this claim.[9] See Anderson, 477 U.S. at 255 (when considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material).

### E. Retaliation based on Non-reinstatement of Privileges

Finally, Plaintiff claims that the PRC Defendants (Tice, Ennis, and Cole) "reversed the guilty verdict" of the misconduct and "dismissed the 90 day sanction." ECF No. 4, ¶ 29. Plaintiff explains that it is the usual practice upon the dismissal, reversal, or vacation of a misconduct sanction to reinstate an inmate to his prior status with all its privileges, but for Plaintiff, these Defendants refused to reinstate his radio, phone calls and food purchases after the exoneration of his misconduct. Id.

The record reflects that Plaintiff arrived at SCI Forest in March of 2011 after spending over ten years in the Restricted Housing Unit (RHU) at his previous place of incarceration. ECF No. 18-2, Declaration of Eric Tice, Deputy Superintendent, page 38. Although officials at SCI

---

[9] Even if he argues that the earlier Grievance No. 395086 provides the constitutionally protected conduct for this retaliation claim, Plaintiff's *prima facie* case fails as he has not demonstrated any causal connection between the filing of that earlier grievance and the filing of the misconduct.

Forest opted to place Plaintiff in general population, a few days later he assaulted a correctional officer. Id. Plaintiff was found guilty of a misconduct and sentenced to ninety days in disciplinary custody. After completing the DC time, Plaintiff was continued in the RHU under Administrative Custody. According to Defendants, Plaintiff remained in the RHU under AC when the original misconduct for lying was issued on February 9, 2012.

After March of 2012 the record becomes muddled as to the outcome of the reissued misconduct and Plaintiff's resulting housing status. The record contradicts itself as to whether the misconduct was dismissed and/or whether Plaintiff was exonerated. Deputy Superintendent Tice's Declaration indicates that the PRC "formally dismissed the misconduct … due to the procedural confusion [stemming from the typographical error in Grievance No. 399229] that had been generated, not because we felt that Inmate Coffee was not guilty." ECF No. 18-2, pages 39-40. The PRC report to which Tice refers actually indicates that the PRC sustains the hearing examiner's decision and makes no mention of dismissing the misconduct or terminating the disciplinary custody sanction. ECF No. 18-2, page 13. Meanwhile, the April 18th document amending the PRC's earlier response indicates that the inmate is "exonerated." ECF No. 18-2, page 14.

Furthermore, there is contradictory evidence as to Plaintiff's housing status that followed the favorable termination of the reissued misconduct. Tice's Declaration indicates that Plaintiff was placed on AC status when the PRC decided to release him from the remainder of the DC time on March 29, 2012. ECF No. 18-2, pages 39-40, ¶ 6. As previously discussed, the PRC decision to which Tice refers does not mention the commutation of the remainder of Plaintiff's sanction. ECF No. 18-2, page 13. Tice's Declaration is further contradicted by the "Other

14

Report" which indicates that Plaintiff was not in AC status after his DC time was dismissed. ECF No. 18-2, page 16.

Both the outcome of the misconduct and Plaintiff's resulting housing status are material issues of fact that impact the resolution of Plaintiff's retaliation claim. If Plaintiff was exonerated and was not on AC status, it may be that he was entitled to receive all privileges associated with general population. Meanwhile, if Plaintiff was on AC status, the reinstatement of privileges would have been subject to Department of Corrections policy DC ADM 802, § 3 which provides the PRC with standardized timeframes for consideration of privileges for inmates in AC.

Accordingly, because of these disputed material issues of fact, summary judgment should be denied as to this claim.

### III. CONCLUSION

Based on the foregoing, it is respectfully recommended that the motion for summary judgment filed by Defendants [ECF No. 15] be GRANTED IN PART AND DENIED IN PART.

- Summary judgment should be granted in favor of Defendants on Plaintiff's retaliation claims based upon illegal cell searches due to Plaintiff's failure to exhaust his administrative remedies;

- Summary judgment should be denied on Plaintiff's retaliation claim based upon the false misconduct; and

- Summary judgment should be denied on Plaintiff's retaliation claim based upon the denial or non-reinstatement of privileges.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation in accordance with the schedule established in the docket entry indicating the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the

date of service of Objections to respond thereto.  See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011); <u>Nara v. Frank</u>, 488 F.3d 187 (3d Cir. 2007).

<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February13, 2014